**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **T.C., BY AND THROUGH HIS PARENT,** | ) |
| **A.C., and A.C., individually,** | ) |
| Plaintiffs, | ) |
| | ) |
| **v.** | ) |
| | ) No. __________________ |
| **FRANKLIN SPECIAL SCHOOL DISTRICT,** | ) |
| Defendant. | ) |
| | ) |
| | ) |

---

**COMPLAINT FOR ATTORNEYS' FEES AND EXPENSES AND PETITION FOR REVIEW OF DENIAL OF PRIVATE PLACEMENT REIMBURSEMENT AND/OR OTHER APPROPRIATE RELIEF**

---

COME THE PLAINTIFFS, T.C., a minor, by and through his parent, A.C., and A.C., individually, by and through their attorneys, and file this Complaint for attorneys' fees and litigation expenses and for review of denial of private placement reimbursement claim or other appropriate relief. They show:

## I. PARTIES AND JURISDICTION

1. T.C., a thirteen-year-old minor child, resides with his parent, A.C., in Williamson County, Tennessee. The initials T.C. and A.C. are pseudonyms to protect the educational privacy of a minor child with disabilities.

2. Franklin Special School District ("FSSD"), the Defendant, is vested with the control and operation of the public school system within the Franklin Special School District in

Williamson County, Tennessee. It may be served with process through its Director of Schools, Dr. David Snowden, 205 Eddy Lane, Franklin, TN 37064.

3. FSSD receives state and federal funding to provide special education to persons with disabilities under the IDEA.

4. This action arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., and specifically 20 U.S.C. § 1415(i)(3)(B), which authorizes an award of reasonable attorneys' fees and costs to a prevailing party. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

5. As a student with Other Health Impairment (ADHD) and Autism, T.C. is covered by the IDEA, 20 U.S.C. §§ 1400 et seq. He has an Individualized Education Program ("IEP") providing him special education and related services.

## II. FACTS

6. Plaintiffs and Defendant were parties to an administrative due process hearing under the IDEA held on July 8-10, 2026, before Administrative Judge Michael T. Begley, Tennessee Department of State, Administrative Procedures Division, APD Case No. 07.03-254860J.

### *The ALJ Found a Two-Year Denial of FAPE and Ordered Training*

7. The hearing concluded with a Final Order entered July 29, 2026 (the "Final Order", attached hereto as **Exhibit A**). The Final Order found that for two years—fifth and sixth grades (the 2022-2023 and 2024-2025 school years), none of the IEPs provided by FSSD to T.C. provided him a FAPE as they lacked social-emotional present levels, social-emotional goals, and

behavioral services for emotional/social behavior,[1] and that FSSD failed to conduct the FBA/BIP[2] process. (Final Order, p. 18).

8. The Order further explains that an FBA serves to identify the root or function of behavior, which then informs a BIP and behavioral services; for students with T.C.'s diagnoses, the social-emotional component informs present levels and IEP goals. (Final Order, p. 4, ¶ 9). Across two years of failures, FSSD expressly identified a pattern of behavior impeding learning, yet *still* provided no FBA, social-emotional present levels, corresponding social-emotional goals, or social-emotional behavioral services. (Final Order, p. 4, 5, ¶ 9, 13; pp. 18-20).

9. As a remedy, Judge Begley ordered FSSD to undergo mandatory training on compliance with understanding root-cause-of- behaviors through a Functional Behavior Assessment, per TENN. COMP. R. & REGS. 0520-01-09-.24(3)(c)—administrative relief that requires FSSD to change its conduct going forward, and that, FSSD would not otherwise have been obligated to undertake.

***Petitioner Seeks Review of Reimbursement or Other Equitable Relief***

10. Despite finding a two-year denial of FAPE, the ALJ denied Petitioners' request for reimbursement of the cost of T.C.'s private placement at Benton Hall Academy in the amount of $31,009.20, concluding that the placement did not satisfy the standard for private-placement reimbursement articulated in *L.H. v. Hamilton Cnty. Dep't of Educ.,* 900 F.3d 779, 791 (6th Cir. 2018), and *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 523 (6th Cir. 2003).

---

1 Though FSSD did purport to add one sole social/emotional goal in the later half of sixth grade, as the ALJ correctly noted, even still, this goal involving using a timer to stay on task, was a prevocational goal, rather than a social-emotional goal. (Final Order, p. 11, ¶ 30).

2 "Functional Behavior Assessment" and "Behavior Intervention Plan."

11. The ALJ correctly found that while at Benton Hall Academy, "T.C. [was] actively engaged in instruction in his academic classes, [made] genuine connections with his teachers and peers, treats others with respect, manages his emotions appropriately, and requires only occasional redirection. (Final Order, p. 12, ¶ 35). Importantly, the ALJ noted that "T.C. no longer has anxiety over attending school" and that his "report cards from Benton Hall reflected and encouraging and consistent upward trend in T.C.'s efforts and achievements." (*Id.* at ¶ 36).

12. In addition to meeting T.C.'s academic and social/emotional needs, the ALJ's own findings do, in fact, satisfy the "some element" of special education standard, where the public school was deficient, identified in *L.H.* for reimbursement.

13. First, in addition to meeting his academic needs, the ALJ correctly found that Benton Hall "provides group counseling that T.C. attends weekly with his peers to improve their conflict resolution and social skills." (Final Order, p. 12, ¶34).

14. Second, Benton Hall's small classes (7-9 students, 3-5 in reading and math) are intentionally structured to be that small in size *because of* behavior—"to foster a relationship between students and teachers for behavioral improvement" and identify "behavioral issues" before they "escalate into disruption." (Final Order, p. 12, ¶34).

15. Third, Benton Hall's structure produced results the ALJ itself found: T.C. "makes genuine connections with his teachers and peers" and "no longer has anxiety over attending the school." (Final Order, p. 12, ¶35).[3]

[3] In contrast, FSSD never offered weekly group counseling; the closest it came was noting, in its final May 2024 IEP, that counseling was theoretically "available" "if A.C. ever wanted to use those services for T.C." (Final Order, p. 10, ¶29). FSSD also educated T.C. in classes of roughly 20 students, with 8 students with disabilities sharing a single aide. (Final Order, pp. 11–12, ¶33). And at FSSD, T.C. did not have a "meaningful choice" to return to FSSD—he tried but

16. Thus, unlike FSSD, Benton Hall did, quite successfully, address T.C.'s social and behavioral limitations, whereas FSSD was so obviously deficient to have denied him FAPE over two years by withholding the necessary social/emotional and behavioral instruction and supports he required to even attend school at FSSD. (Final Order, p. 12, ¶ 25).

17. Following entry of the Final Order, T.C. filed a Petition for Reconsideration asking the ALJ to reconsider application of the "some element" and deficiency standard in *L.H.*

18. On August 17, 2026, the ALJ entered an Order Denying the Petition for Reconsideration (the "Reconsideration Order", attached hereto as **Exhibit B**).[4] The Reconsideration Order identifies no Finding of Fact in the Final Order requiring correction, and its stated reasoning cannot be reconciled with the Final Order's own factual findings.

19. The Reconsideration Order's reasoning does not identify what additional showing, beyond the "some element" findings the ALJ already made, would be required for reimbursement. The Reconsideration Order states that *L.H.*'s "some element" language establishes only "a minimum requirement" and that it "does not automatically make a private school an appropriate placement if it provides some element of special education services." (Reconsideration Order, p. 2).

20. Having said that "some element" is necessary, but not sufficient, the Reconsideration Order never identifies what *more* is required, nor explains why the ALJ's own findings—that Benton Hall provides T.C. with much smaller settings across all his academic

experienced "worsening suicidal ideation," coded "black," and became physically and mentally unable to return to school. (Final Order, p. 9, ¶¶ 24–25).

[4] FSSD had moved for reconsideration of the FAPE denial. The Reconsideration Order left undisturbed the ALJ's determination that FSSD denied T.C. a FAPE for both fifth and sixth grade.

courses, especially for his core reading and math instruction, allows him to make genuine connections and feel safe at school, and provides weekly group counseling designed to address conflict resolution amongst peers, one of T.C.'s established areas of deficiencies, and that through all of these avenues, placement of T.C. at Benton Hall produced measurable results, including the elimination of T.C.'s anxiety about attending school itself—failed to satisfy whatever additional standard the ALJ has in mind.

21. A ruling that recites a legal test, but declines to apply it to the very findings already made, and identifies no further requirement, is legal error.

22. The Reconsideration Order also states that "[b]oth schools offer access to counseling services." (Reconsideration Order, p. 2). But counseling was never delivered as a related service at FSSD. Moreover, that statement cannot be reconciled with the Final Order's own findings that none of T.C.'s fifth-grade IEPs contained "any behavioral service for emotional and social behavior" (Final Order, p. 4, ¶6), and that the only counseling-related finding as to FSSD was that in May 2024 the IEP team "*discussed* the availability of mental health counseling *if* A.C. ever wanted to use those services for T.C." (Final Order, p. 10, ¶29). Suchy a passive, undelivered contingency is not a service actually offered by the district.

23. The Reconsideration Order further states that "[t]he Final Order made no finding that FSSD's class sizes were part of FSSD's denial of FAPE or that they were a detriment to T.C.'s education." (Reconsideration Order, p. 2). That observation does not respond to the governing standard, under which the relevant question is not *whether FSSD's own class sizes* caused the FAPE denial, but whether *Benton Hall's* intentionally smaller class structure supplies "some element of

special education services in which the public school placement was deficient." *L.H.*, 900 F.3d at 796.

24. The Reconsideration Order does not address, and does not disturb, the Final Order's own finding that Benton Hall's small classes exist "to foster a relationship between students and teachers for behavioral improvement" and to identify "behavioral issues" before they "escalate into disruption" (Final Order, p. 12, ¶34)—the very area of behavioral support in which FSSD was found deficient through its failure to conduct a mandatory FBA.

25. The Reconsideration Order also states that "the Final Order made no finding that FSSD's denial of FAPE was the direct cause of T.C.'s mental health decline." (Reconsideration Order, p. 3). No such causation requirement appears anywhere in *L.H.*, *Berger*, *Burlington*, or *Carter*, each of which asks only whether the *private placement* provides some element of the services in which the public placement was deficient—not whether the public placement *cause*d the student's underlying mental health condition. The introduction of this extra-textual requirement, without citation to any element of the governing framework, is itself irreconcilable with the standard the Reconsideration Order purports to apply.

26. The Reconsideration Order does not identify a single Finding of Fact in the Final Order requiring correction, and it leaves undisturbed the ALJ's own findings that Benton Hall provides T.C. weekly group counseling and a small-class structure specifically designed to address the same behavioral deficiency underlying FSSD's FAPE violation. (Final Order, p. 12, ¶¶34–35). Indeed, no FSSD IEPs or PWNs offered smaller classes or counseling.

27. Because the Reconsideration Order's stated rationale cannot be reconciled with the ALJ's own unchallenged Findings of Fact, Plaintiffs petition this Court, applying the modified de

novo standard of review that affords deference to the ALJ's factual findings, while requiring correct application of the governing legal standard, to reverse the denial of reimbursement and award Plaintiffs $31,009.20 for the cost of T.C.'s placement at Benton Hall Academy.

28. Either Benton Hall's weekly counseling and behavioral supports address an area in which FSSD was deficient, in which case they support the appropriateness of the private placement under *L.H.*, as T.C. contends; **or**, if the ALJ was somehow correct that those services at Benton Hall do **not** establish the private placement's appropriateness, the Court must order FSSD to fund appropriate compensatory social-emotional/behavioral services now.[5]

29. Even though FSSD only goes through eighth grade itself, said relief is backwards looking (for two years of past failures); accordingly, in addition to the already required training, other equitable relief would include social skills and peer-conflict counseling (particularly since the ALJ found Benton Hall's provision of same somehow did not sufficiently address this deficiency); individual therapy; behavioral consultations; and/or other compensatory services under the Court's broad, equitable authority.

## III. RELIEF

30. The IDEA provides District Courts with "broad discretion" to fashion "such relief as the court determines is appropriate. *Knable v. Bexlley City Sch. Dist.,* 238 F.3d 755, 770 (6th Cir. 2001). Additionally, administrative law judges do not have authority to award monetary relief,

[5] If *Benton Hall's* weekly counseling and behavioral supports are sufficiently related to T.C.'s unmet social-emotional and behavioral needs to constitute the "some element" in the area of deficiency, required by *L.H.*, reimbursement is warranted; if they are not, then those same adjudicated unmet needs remain to be remedied through compensatory services funded by FSSD. FSSD cannot have it both ways.

including attorneys' fees and costs, under the IDEA. Plaintiffs must therefore bring this action in federal district court to recover their attorneys' fees and costs as prevailing party.

31. The Final Order adjudicated FSSD's denial of FAPE in T.C.'s favor for both school years at issue—the entirety of fifth and sixth grade—and ordered FSSD to undergo mandatory compliance training. This is judicially sanctioned relief, and Plaintiffs seek reversal of the private reimbursement claim and/or other equitable relief identified above. Accordingly, Plaintiffs seek appropriate relief, along with their costs and the reasonable attorneys' fees of Justin S. Gilbert and Jessica F. Salonus, and any other costs recoverable under the IDEA, 20 U.S.C. § 1415(i)(3)(B).

32. Plaintiffs request a Court-ordered schedule with a hearing or briefing date to address the reimbursement claim for review along with a date for submission of the dollar amounts of the fees and costs. Plaintiffs also seek the additional fees and costs that will be incurred in the prosecution of this action, and for any further relief that is just.

Respectfully Submitted,

**GILBERT LAW, PLC**

/s/ Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
justin@schoolandworklaw.com

**THE SALONUS FIRM, PLC**

/s/ Jessica F. Salonus
Jessica F. Salonus (TN Bar No. 028158)
139 Stonebridge Blvd.
Jackson, TN 38305
Telephone: 731.300.0970
jsalonus@salonusfirm.com